*355 Bautle, J.,
dissentiente. I cannot concur with the majority of the Court, upon the question of the admissibility of the testimony offered by the prisoner, to show the character of the deceased for violenee. It is with unaffected diffidence that I place my opinion in opposition to theirs, but, in doing so, I am consoled by the reflection, so often felt and expressed by Judges placed in a similar situation, that the conclusion to which I have been led, however erroneous, will at least be harmless. A homicide committed, otherwise than by virture of a legal precept, must be either murder, manslaughter, or excusable homicide. With malice it is murder, and even in the absence of express malice, it is still murder,unless the prisoner can show from the attendant circumstances, that it was prompted by legal provocation, committed by accident, or rendered necessary in self defence. Every fact and circumstance, which surround the main fact of the homicide, become therefore matters of vital importance, and ought to be admitted in evidence, when they can throw the least light upon it. It seems to me, that the character of the deceased for violence is one of those attendant circumstances, which will always have some, and often an important, bearing upon that which must necessarily be the subject of investigation, that is, what were the motives which impelled the slayer to act ? Take first the case, where the prisoner defends, upon the ground, that he killed his assailant in his necessary self protection. To sustain his de-fence, he must show to the satisfaction of the jury he was assailed and that he had retreated, as far he could with safety to his own life, before giving the mortal stroke, or that the violence of the assault was such that retreat was impracticable. Is it not manifest, that his apparent danger would depend much upon the character of the assailant for mild and amiable temper or for violent and ungovernable passion ? With an assailant of the former character, he would have little to fear under circumstan *356 ces, in which with the latter his life would be in great peril. Let it be recollected, too, that he has to judge and to act at the instant, upon the most tremendous reponsi-bility. If he strike too soon he is condemned to a fel-lon’s death upon the gallows. If he strike too late he falls by the hands of his adversary. Surely the jury, who tries him, ought not to require from him proof of the same forbearance, when attacked by a man of blood, as when attacked by a man of peace. His danger would undoubtedly be greater in the one case than in the other ; why then not allow him to prove it ? There is certainly nothing in the nature of the testimony, which ought to forbid it. Proof of the superior physical strength of the deceased is always admitted ; why then not admit proof of that, which gives to the physical strength much of its force, and all of its danger. It appears to me, too, that the privilege, which the prisoner has, of giving in evidence his own peaceable general demeanor, is of an analogous nature. Testimony of the kind is not only admissible for the prisoner, but it has been said by very high authority that it is often testimony of much 'weight. Chief Justice' Henderson says, in the case of the State v. Lipsey, 3 Dev. Rep. 493, that “ the peaceable and orderly character which the prisoner had ever borne, had, I think, more “ than but little weight” which the Judge in the Court below had been disposed to allow, when the facts attending the homicide had been positively sworn to.” The character of the prisoner is offered only as presumptive evidence, and the character of the deceased is offered for no more, but, as presumptive evidence, it does seem to me to be as strong, and therefore ought to be as readily admitted as the other.
If I have been successful in showing that the testimony of the violent character of the deceased ought to be admitted for the prisoner, when he defends upon the ground of killing in self-protection, the same process of reasoning will lead to the conclusion, though in a less striking *357 manner, that it ought to be admitted to show that the prisoner acted upon a legal provocation. That, which would be considered legal provocation, when offered by a man apt to strike and ready to shed blood, might, very properly, not .be so regarded when offered by one of a contrary disposition. But it is said, that the right to kill does not depend upon the character of the slain — that the law throws its mantle of protection equally over the violent and the gentle, as the rain falls from Heaven equally on the just and on the unjust. That is admitted, but it proves nothing. It is true that the killing of a violent and blood-thirsty man, without provocation or excuse, is as much murder, as the killing of any other person ; but in ascertaining the fact whether there was such provocation or excuse, I contend, that the character of the violent man affords important presumptive testimony in favor of the accused. It is urged again, that where the proof is positive and clear, that there was no legal provocation, the evidence of character can have no effect, and on that account ought to be rejected. To this I answer that plenary proof on one side can never justify the rejection of testimony, otherwise competent, on the other. The argument confounds the effect and the competency of testimony. Testimony, which is competent, which may be introduced at all-may be introduced, no matter how little may be its effect, —nay even, if it be perfectly manifest in the particular case that it can have no effect whatever. It is urged further in the case before us, that the jury have found that there was no legal provocation and therefore the evidence must be rejected, as being entirely immaterial and useless. The reply is that it was offered before the jury had so found, and if it had been admitted, it is possible, that their deliberations might have led them to a different conclusion. But it is urged finally, that there is no authority in favor of the admissibility of such testimony. However this may be elsewhere, I contend that it is not *358 so in this State. In the case of the State v. Tacket, 1 Hawks Rep. 210, the prisoner was indicted for the murder of a slave. No witness was present when the homicide was committed; and the testimony against the prisoner consisted principally of his declarations, and of circumstances connected, more or less remotely,with the transaction. In the progress of the cause, the prisoner offered to prove “ that the deceased was a turbulent man, and that he was insolent and impudent to white people ; but the Court refused to hear such testimony, unless it would prove that the deceased was insolent and impudent to the prisoner in particular.” The prisoner having been convicted and having appealed to this Court, it was decided that the testimony was proper and ought to have been admitted. Taylou, Chief, Justice, delivered the unanimous opinion of the Court, in which, after remarking upon the character of the testimony, and the nature of the enquiry, he said: “ It cannot be doubted, that the temper and disposition of the deceased, and his usual deportment towards white persons, might have an important bearing upon the enquiry, and, according to the aspect in which it was presented to the jury, tend to direct their judgment as to .the degree of provocation received by the prisoner. If the general behavior of the deceased was marked with turbulence and insolence, it might,in connextion with threats, quarrels and existing causes of resentment he had against the prisoner,increase the probability, that the killer had acted under a strong and legal provocation.” Here there is a case, in which it was distinctly declared, that, the character of the deceased might be offered in evidence on behalf of the prisoner. An attempt is made to destroy the effect of this decision and of its applicability to the case before us, by saying that it is an authority only in a case where the deceased was a slave, and where there was no direct testimony as to the provocation, under which the prisoner acted. To the first of these objections the reply is that the Court cer* *359 tainly, did not assign the fact of the deceased being a slave, as a reason for admitting the testimony. It is true, that a slighter cause would be a legal provocation in the case of a slave, than in the case of a white man: but they did not intimate that the provocation was to be proved by a different kind or degree of testimony. The second objection is better founded; but I can see no reason for the distinction. The testimony as to character may perhaps be stronger in the case, where there is no direct and positive evidence as to the provocation, than where the evidence is only circumstantial; but its object and its office are the same in both cases ; that is, to ascertain whether the slayer acted upon, or without, a sufficient provocation. If admissible, then, in one case, it ought not to be rejected in the other.
Upon the whole, I am of opinion, that testimony of the character of the deceased for violence may be offered by the prisoner in all cases, where the enquiry is, whether he acted from malice or upon legal provocation or excuse.
Per Curtam. Ordered to be certified to the Court below that there is no error.